IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

CHARLES FRANKLIN MCAFEE, JR.,　　}
TDCJ-CID NO. 1207010,　　　　　　 }
　　　　　　　Petitioner,　　　　　 }
v.　　　　　　　　　　　　　　　　}　　　　　CIVIL ACTION NO. G-07-0361
　　　　　　　　　　　　　　　　　}
NATHANIEL QUARTERMAN,　　　　　　}
　　　　　　　Respondent.　　　　　}

OPINION ON DISMISSAL

      Petitioner Charles Franklin McAfee, Jr., an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his underlying conviction for aggravated robbery. (Docket Entry No.1).   Respondent has filed an answer, in which he moves for a dismissal of the petition with prejudice and the denial of a certificate of appealability.  (Docket Entry No.7).  Petitioner has filed a Reply/Traverse to the answer (Docket Entry No.9) and respondent has filed a Response to the Reply.  (Docket Entry No.13).  Petitioner has further filed a Traverse/Answer to Respondent's Reply.   (Docket Entry No.14).   After a careful review of the entire record and the applicable law, the Court will grant respondent's motion for dismissal and deny petitioner federal habeas relief.

I. FACTUAL AND PROCEDURAL HISTORY

      A Texas grand jury indicted petitioner in cause number 02CR2610, alleging that he committed aggravated robbery.  *McAfee v. State*, No.01-03-01041-CR, Clerk's Record, page 2. A jury in the 56th Judicial District Court of Galveston County, Texas heard evidence of the following, as summarized by the First Court of Appeals for the State of Texas:

On June 8, 2002, at 5:20 a.m., McAfee entered the Rush-In Grocery, a convenience store in Santa Fe, Texas. The cashier, Raye Ann Clark, testified at the trial that McAfee entered the store and began looking at oil while she waited on another customer. After the customer exited the convenience store, McAfee brought the oil up to the counter. As Clark examined the oil to locate its price, McAfee pulled out a knife and asked her if she had ever been robbed. McAfee jumped up onto the counter, asked Clark to open the cash drawer, and requested her to go to the cooler. Clark moved towards the cooler and then she heard McAfee leave the store. She then ran to the front of the store, where she saw a two-tone Bronco exiting the parking lot. Clark called emergency assistance to report the robbery.

Captain G. Keith Meenen, along with several other members of the Santa Fe Police Department, arrived at the convenience store to investigate the robbery. Clark gave the responding officers a description of the suspect and the vehicle he was driving. McAfee became a suspect in the robbery almost six months later, when a patrol officer pulled him over during a routine traffic stop. The officer noted the similarities between the description of the suspect and the Bronco to the driver and his vehicle that he had stopped. A short time later, Clark identified McAfee out of a six-person photographic lineup. Meenen filed an arrest warrant for McAfee based on the positive identification and the matching vehicle description.

*McAfee v. State*, No.01-03-01041-CR, 2004 WL 2966361 at *1 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (not designated for publication).

During the defense's case-in-chief, the jury heard testimony from petitioner and his friend Blaine Carmichael. *Id.*, Reporter's Record, Volume 4. Carmichael attested that he lived on Aqueduct Road in Houston, Texas. *Id.* at 34-35. Carmichael recounted how on June 7 and 8, 2002, he and his friends celebrated his birthday by patronizing several bars and clubs. *Id.* at 38-40. Carmichael attested that petitioner joined the celebration at Duster's Saloon around midnight on June 7. *Id.* at 40. Around 2:15 a.m. on June 8, Carmichael and his friends decided to go to his house to continue the celebration. *Id.* at 41. Carmichael attested that petitioner followed the group to Carmichael's property but petitioner did not join the party; he went directly to a trailer on the property where he lived. *Id.* at 42. Carmichael indicated that he, Bill, and

Chad sat out front of Carmichael's house in the woods drinking beer and talking. *Id.* at 43. He stated that Chad left about 3:30 a.m. and that he and Bill sat outside until 4:30 a.m. *Id.* Carmichael testified that he did not see petitioner leave the property; he indicated that he next saw petitioner around 8:00 or 9:00 a.m. on June 9, when petitioner pounded on his door wanting Carmichael to make a pot of coffee. *Id.*

Carmichael further explained that he saw petitioner go down the road to the trailer and did not see him leave. *Id.* at 44. He said that he probably would have seen petitioner leave because the two dogs owned by Carmichael's former neighbor would have chased petitioner's vehicle and barked. *Id.* Carmichael said he would have heard the dogs unless they were sleeping. *Id.*

Carmichael also attested that petitioner had a mole on his face and that he sported a goatee and not a mustache. *Id.* at 54. Carmichael further attested that it took approximately one hour to drive from his home in Houston to the Santa Fe area. *Id.* at 46.

Petitioner testified that when the party moved to Carmichael's property, he drove to the trailer behind Carmichael's house and did not leave it until the next day when he sought a pot of coffee from Carmichael. *Id.* at 74-75. Petitioner denied robbing "the lady" in the convenience store. *Id.* at 75. On cross-examination, petitioner attested that he lived in Houston and Santa Fe but that at the time of the robbery, he was living in Santa Fe. *Id.* at 77. He claimed that he had never heard of the grocery store that was robbed. *Id.*

After some deliberation, the jury found petitioner guilty as charged. *Id.*, Clerk's Record, pages 69-70. Petitioner entered a plea of true to two enhancement paragraphs and on June 6, 2003, the court sentenced him to twenty-eight years confinement in TDCJ-CID. *Id.* at 69. Thereafter, petitioner informed the state district court that he wanted to file a motion for new

trial. *Id.*, Reporter's Record, Volume 1, Punishment Hearing, pages 11-12. Petitioner's trial counsel Michael Donahue indicated that he would file the motion but that he would not represent petitioner on appeal. *Id.* at 12. The state district court informed petitioner that it would appoint an appellate lawyer after petitioner filed a formal written notice to have an appellate lawyer appointed and such motion was set on the docket. *Id.*

On June 13, 2003, petitioner filed a motion to dismiss his court-appointed counsel. *Id.* at 73. On the same day, petitioner's trial counsel filed a motion for new trial on grounds that there was no evidence to support the conviction and for reasons set forth in Exhibit A, in which petitioner enumerated his various complaints. *Id.* at 75-79. After a hearing, the state district court granted the motion to remove counsel as attorney of record and denied the motion for a new trial. *Id*., Reporter's Record, Volume 1, page 48.

On direct appeal, petitioner sought relief on grounds that the state district court erred in granting the State's request to amend the indictment on the day of trial and that he was denied the effective assistance of counsel at trial. *McAfee*, 2005 WL 3118128 at *1. Petitioner complained that his trial counsel failed to object to the State's motion to amend the indictment and failed to call the witnesses that petitioner requested him to call. *Id*. at *2-4. In affirming the state district court's judgment, the intermediate state appellate court found that petitioner waived his complaint to the indictment amendment and the lack of ten-day notice. *Id*. at *2. The intermediate appellate court further found that petitioner received effective assistance of counsel at trial. *Id*. at *3-4. Petitioner filed a motion for rehearing, which was denied on February 7, 2005. (Docket Entry No.1). Petitioner did not file a petition for discretionary review. (*Id*.).

Petitioner then filed a state habeas application, seeking relief on the following grounds:

1. The evidence was legally and factually insufficient to support the conviction as charged in the original indictment;

2. He was denied a fair trial and due process when the state district court granted the motion to amend the indictment but failed to amend the indictment, to give petitioner notice of the amendment, and time to prepare a defense to the new allegation;

3. He was denied a fair trial and due process when the state district court charged the jury with a different offense than the one originally charged by the grand jury;

4. The state district court lacked jurisdiction over the case because the indictment was fundamentally defective;

5. Petitioner is actually innocent;

6. He was denied the effective assistance of counsel at trial because trial counsel:

   a. Failed to object to the motion to amend the indictment and to notify petitioner of the motion;

   b. Allowed him to be tried on an offense not charged by indictment;

   c. Failed to call alibi witnesses and prepare a defense to the charge; and,

   d. Failed to represent him at the hearing on the motion for new trial because of a conflict of interest; and,

7. He was denied the effective assistance of counsel on appeal because appellate counsel failed to identify issues and properly prepare petitioner's issues and to include witness statements.

*Ex parte McAfee*, Application No.WR-65,926-01, pages 1-10.  Both trial and appellate counsel filed affidavits with the state district court.  *Id*. at 254-55, 256-259, 279-80.  The state district court entered Findings of Fact on petitioner's claims.  *Id*. at 285-86.  On January 17, 2007, the Texas Court of Criminal Appeals denied the application without written order on the trial court's findings without a hearing.  *Id*. at inside cover.

In the pending petition, petitioner seeks federal habeas relief on the following grounds:

1. Petitioner was denied the effective assistance of counsel at trial because counsel:

    a. Failed to prepare for trial;

    b. Refused to call alibi witnesses;

    c. Failed to inform petitioner of rights concerning the amendment of the indictment;

    d. Object to the reading of a charge not found in the indictment;

    e. Investigate Andy McDonald;

    f. Failed to request ten days to prepare for the new offense charged in the amended indictment;

    g. Refused to seek a directed verdict when no evidence or testimony was presented to the jury of the offense charged in the indictment; and,

    h. Worked under a conflict of interest during the motion for new trial hearing;

2. The evidence is legally and factually insufficient to support his conviction and a deadly weapon finding;

3. He is actually innocent;

4. The state district court lacked jurisdiction over an offense not charged by indictment;

5. The state district court erred by:

    a. Offering a jury charge that violated petitioner's due process rights because it did not follow the indictment; and,

    b. Failing to grant petitioner's motion to dismiss counsel until after the hearing on his motion for new trial, with knowledge of the conflict of interest between petitioner and trial counsel; and,

6. Petitioner was denied the effective assistance of counsel on appeal because appellate counsel:

    a. Failed to raise many issues on direct appeal; and

    b. Failed to adequately brief the issues he did raise.

6

(Docket Entry No.1).

Respondent moves for dismissal on grounds that some of petitioner's claims are procedurally barred and that he has failed to meet his burden of proof to show the state court's adjudication of the other claims are unreasonable or that he is otherwise entitled to habeas corpus relief. (Docket Entry No.7).

## II. STANDARD OF REVIEW

Petitioner's federal habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000). In this case, petitioner presented claims in a state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court without a hearing. As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)). Therefore, only those claims properly raised by petitioner in a state application for habeas corpus relief have been adjudicated on the merits by the state courts.

7

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) hold that this Court shall not grant relief unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)). Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers").

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of he prisoner's case." *Id.* To be unreasonable, the state decision must be more than

merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *Id.* Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines*, 404 U.S. at 521.

### III. ANALYSIS

#### A. Defective Indictment

Petitioner contends that he was denied a fair trial because he was convicted pursuant to a defective indictment, which deprived the state district court of jurisdiction. (Docket Entries No.1, No.9). The record shows that petitioner was originally charged with the aggravated robbery of Andy McDonald, who was later determined to be the owner of the grocery store. *McAfee v. State*, No.01-03-01041-CR, Clerk's Record, page 2. Before trial commenced, the State moved to amend the indictment by written motion to reflect the aggravated robbery of Raye Ann Clark, the cashier. *Id.* at 42-44; Reporter's Record, Volume 3, pages 8-9. Petitioner's trial counsel, Michael Donahue ("Donahue"), requested the Court to write an order disposing of the motion. *Id.*, Reporter's Record, Volume 3, page 9. The state district judge indicated that she

would write an order and make an entry on the docket sheet.  *Id.*  After Donahue waived the ten-day notice period required by state law, the state district court granted leave to amend the indictment.  *Id.* at 10.  The record does not reflect that the original indictment was altered to reflect the amendment, that the state district court issued a written order granting the motion to amend as requested, or that an amended indictment, other than the one in the State's motion, was ever filed.  The docket sheet, however, reflects the state district court's order granting the amendment to the indictment.  *Id.*, Clerk's Record, page 4.

"The question whether a defective state indictment confers jurisdiction on the state trial court is a matter of state law."  *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994).  "The sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (1985).  Federal courts, nevertheless, will not consider claims that a state indictment is insufficient to confer jurisdiction upon the trial court when the jurisdictional issue "was squarely presented to the highest court of the state" and it can reasonably be inferred that that court passed on the merits of the jurisdictional claim.  *Id.* at 598-99.  In a habeas proceeding, this Court does not sit in review of a state court's interpretation of its own law.  *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

The state habeas courts found the following, in pertinent part, with respect to petitioner's complaint of the allegedly defective indictment:

> Despite the indictment defect involving the complainant's name, Applicant received sufficient notice of the identity of the true complainant substantially prior to trial via pretrial discovery.  The State's motion to amend the indictment and his subsequent trial involving a different complainant than that named in the

10

indictment did not unfairly surprise Applicant, adversely affect his ability to prepare a defense, or otherwise prejudice his substantial rights.

*Ex parte McAfee*, Application No.WR-65,926-01, page 285.  The Texas Court of Criminal Appeals passed on the merits of the claim regarding the allegedly void indictment when it denied petitioner's state habeas application.  It implicitly found the trial court had jurisdiction over petitioner's case.  This Court will not review that implicit finding.  Consequently, this Court will not consider the claim that the State prosecuted petitioner under a void indictment.

Petitioner also contends that because the indictment was not properly amended, the state district court violated his due process rights by offering the jury a charge that did not follow the original indictment.  (Docket Entries No.1, No.9).  The record reflects that the state district court instructed jurors on the elements of the aggravated robbery of Raye Ann Clark and not Andy McDonald, as alleged in the original indictment.  *McAfee v. State*, No.01-03-01041-CR, Clerk's Record, page 58.  Neither Donahue nor the prosecutor voiced an objection to the jury charge.  *Id.*, Reporter's Record, Volume 4, page 79.  The jury found petitioner guilty as alleged in the indictment.  *Id.*, Clerk's Record at 61.

Improper jury instructions in a state criminal trial do not generally form the basis for federal habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002).  "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  At issue is whether the allegedly ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  *Estelle*, 502 U.S. at 72.  A federal court may reverse a state court criminal conviction based upon erroneous jury instructions only when the instruction in question renders the entire trial fundamentally unfair.

11

*Henderson*, 431 U.S. at 154.   Moreover, there is a strong presumption that errors in jury instructions are subject to harmless error analysis.  *Galvan*, 293 F.3d at 765.

The state habeas courts did not enter explicit findings with respect to the alleged jury charge error; however, the state courts did find that the "subsequent trial involving a different complainant than that named in the indictment did not unfairly surprise [petitioner], adversely affect his ability to prepare a defense, or otherwise prejudice his substantial rights." *Ex parte McAfee*, Application No. WR-65,926-01, page 285.   *McAfee v. State*, No. 01-03-01041-CR, Reporter's Record, Volume 3, pages 8-11.   Petitioner presents no evidence to overcome this finding and no evidence that the instruction rendered his entire trial fundamentally unfair.

Accordingly, petitioner fails to show that he is entitled to federal habeas relief on his claims regarding the amended indictment and allegedly erroneous jury instruction.

## B. Ineffective Assistance of Counsel at Trial

Petitioner contends he was denied the effective assistance of counsel at trial and at the hearing on the motion for new trial.  (Docket Entry No. 1).  The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984).   To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense.  *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 692)).  The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness. *Ogan*, 297 F.3d at 360. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993). Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 687-90. A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair." *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001). Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the

13

state court's decision on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### 1. Failure to Investigate and Call Witnesses

Petitioner claims that trial counsel Donahue was ineffective because he did not fully investigate petitioner's case and did not call two witnesses who would have testified to petitioner's whereabouts at the time of the aggravated robbery. (Docket Entry No.1).

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S at 690-91. If petitioner's counsel was made aware of the names and locations of any witnesses who were able to provide an alibi for petitioner's whereabouts at the time of the aggravated robbery, counsel had a duty to provide a notice of petitioner's alibi. *See e.g. Bryant v. Scott*, 28 F.3d 1411, 1417-18 (5th Cir. 1994) (ineffective assistance of counsel to fail to investigate known alibi witnesses even though defendant uncooperative).

Moreover, a defendant who alleges a failure to investigate by his trial counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). The evidence must have been made known to defense counsel by petitioner, and must have been specific, admissible, and significant in order for counsel's failure to investigate to be constitutionally deficient. *Carter v. Johnson*, 131 F.3d 452, 465 (5th Cir. 1997). Further, the additional information must be significant enough to alter the outcome of the trial. "In order to

14

satisfy the prejudice prong of *Strickland*, [a defendant] must show 'more than the mere possibility of a different outcome.'  [He] must present 'evidence of sufficient quality and force to raise a reasonable probability that,' had it been presented to the jury, the outcome would have been different." *United States v. Drones*, 218 F.3d 496, 504 (5th Cir. 2000) (citations omitted).

Petitioner complains that Donahue failed to call identification expert, Dr. Jerome Brown, to testify at trial.  (Docket Entry No.1.).  The record shows that Donahue moved for funds to employ Dr. Brown, an expert in eye-witness testimony on April 29, 2003.  *McAfee v. State*, No.01-03-01041-CR, Clerk's Record, pages 28-29.  The state district judge granted such motion on May 7, 2003.  *Id.* at 29.  Donahue does not indicate in his affidavits filed in the state habeas proceedings whether he employed Dr. Brown or any other expert.  *Ex parte McAfee*, Application No.WR-65,926-01, pages 254-59, 279-80.  No identification expert testified at trial.

Even if Donahue failed to procure such expert or failed to call such expert to testify about eye-witness identification testimony, petitioner fails to show what Dr. Brown or any other expert would have testified to, what the expert's investigation would have revealed or how it would have altered the outcome of the trial.  Although petitioner claims that complainant's testimony was not credible, he presents no evidence to show that such expert would have testified that she committed perjury, was mistaken in her identification, or in any way gave false testimony.  *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (stating to demonstrate prejudice on uncalled witnesses, petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial").  Therefore, petitioner fails to show that he suffered prejudice from Donahue's failure to pursue this investigation.

Petitioner does not otherwise complain that Donahue failed to interview potential witnesses, of whom petitioner had made him aware.  Petitioner complains that Donahue did not

call two alibi witnesses to testify for him at trial even though these two witnesses were available and would have testified on his behalf.  (Docket Entry No.1).  Petitioner contends that the affidavits of Tresia Albers Ruiz and Chad Jones given in March, 2005, show that Donahue was ill-prepared to go to trial.  (*Id.*).

Tresia Alberts Ruiz attested that after petitioner was arrested, she spoke with Attorney Donahue by phone; she told him that she had been with petitioner until midnight on Friday, June 7, 2002, when she declined petitioner's invitation to stop at a club to celebrate the birthday of a mutual friend.  *Ex parte McAfee*, Application No.WR-65,926-01, pages 114-15.  Ruiz indicated that she went home because she had to work the next day.  She attested that she arrived at petitioner's place on Aqueduct Road in Houston on Saturday at 6:30 and stayed until 9:30 a.m. on Sunday.  *Id.* at 115.  Ruiz attested that she told Donahue that she wanted to testify that petitioner was in Houston that weekend and Donahue stated that he would contact her once a trial date had been set, which he expected to be six to twelve months away.  Ruiz indicated that she was not notified of the trial and that she was upset when she learned of the conviction.  *Id.* at 115.

Chad Jones attested that he met Attorney Donahue on June 3, 2003, the day before Jones was to testify at petitioner's trial.  Jones indicated that he was with petitioner in Houston at a club until it closed and saw petitioner drive toward a place behind the home of the celebrant Blaine Carmichael.  *Id.* at 116.  Jones attested that he did not see petitioner at Carmichael's residence but heard petitioner say that he was going to bed.  *Id.*  Jones expressed surprise at Donahue's reaction to Jones's statement.  *Id.*  Jones attested that Donahue indicated that he needed more time to prepare and that he did not know what to do about some of what he knew.  *Id.*  Jones further attested that Donahue showed him the video tape of the robbery and told

16

Jones that he thought the robber looked like petitioner.  *Id*.  Jones attested that he did not think the robber in the video tape looked petitioner and felt like Donahue was trying to discourage his and Carmichael's testimony at trial.  *Id*.  Jones expressed frustration when Donahue did not call him to testify even though Jones had been subpoenaed and had taken off work to testify for petitioner.  *Id*.

Attorney Donahue attested in state habeas proceedings by affidavit that he presented an alibi defensive theory through petitioner's testimony and the testimony of Blaine Carmichael.  *Id*. at 256.  Donahue said that his theory was that petitioner could not have robbed the Santa Fe convenience store at 5:40 a.m. on June 8, 2002, because on June 8, petitioner had attended a birthday party at a bar in Channelview, Texas and thereafter, driven to a trailer that was located on Carmichael's property in Houston, where dogs would have alerted Carmichael and others if petitioner had left the premises after 4:00 a.m.  *Id*.  In addition to Carmichael, Donahue attested that he interviewed several witnesses including Rick, a Santa Fe resident who told Donahue of petitioner's whereabouts immediately before and after the robbery, which occurred near petitioner's prior residence in Santa Fe.  *Id*. at 257.  Donahue also attested that he interviewed Janie Woolf Clark, [1] who owned the Santa Fe dwelling where petitioner resided before the robbery, and her son Billy Clark.  Donahue attested that he showed the video tape to Janie, Billy, and Mr. Clark.  *Id*.  Donahue further attested that he also interviewed Chad Jones, but did not call him to testify because Jones indicated that he did not see petitioner on the Carmichael property and therefore, his testimony did not support petitioner's defensive theory.  *Id*.  Donahue attested that he spoke with Tresia Ruiz after his second jail visit with petitioner.  *Id*. at 279.  He attested that neither petitioner nor Ruiz told him that Ruiz was at petitioner's

---

[1] Janie Woolfe Clark testified at the punishment hearing that she had known petitioner for fifteen years and was disappointed in the verdict.  *McAfee v. State*, No.01-03-01041-CR, Reporter's Record, Volume 5, page 29.

residence at 6:30 a.m. on the morning of the robbery.  *Id.* at 280.  Donahue indicated that he

asked Ruiz to attend the bond hearing but she did not appear in the courtroom.  *Id.*

        Petitioner fails to show that Donahue's performance was deficient by his failure to

call Ruiz and Jones to testify at trial.  The sworn statements of Ruiz and Jones do not provide

petitioner with a clear alibi as to his whereabouts at the time the convenience store was robbed

on June 8, 2002.  Although Ruiz does not indicate in her affidavit whether she arrived at

petitioner's Houston residence on Carmichael's property at 6:30 a.m. or p.m. on Saturday, June 8,

she implies by her statement that she had to work the next day that she arrived at petitioner's

Houston home after work on Saturday.  Such implication is consistent with Donahue's attestation

that he did not recall petitioner or Ruiz telling him that she arrived at his Houston residence at

6:30 a.m. Saturday morning.  Jones's statement that petitioner partied with him and others and

presumably retired to a trailer on Carmichael's property is cumulative of Carmichael's testimony.

Jones did not indicate that he saw petitioner on the property or that he saw petitioner leave the

property.

        The state habeas courts found that Donahue rendered constitutionally effective

assistance and that petitioner failed to show that had counsel acted as he now asserts he should

have such as having Jones or Ruiz testify, the outcome of the case would have likely been

different.  *Id*. at 285.  Petitioner has not demonstrated that the state habeas courts' findings are an

unreasonable application of federal law or an unreasonable determination of the facts in light of

the evidence presented at trial.

<u>2. Defective Indictment</u>

Petitioner next complains that trial counsel Donahue was ineffective because he did not discuss the defective indictment with petitioner, the need to amend the indictment, or petitioner's rights upon the amendment of the indictment. (Docket Entry No.1). Petitioner further complains that Donahue's defense of sneaking in court with a faulty indictment amounted to no defense and that Donahue had not prepared for trial under the newly amended indictment; therefore, petitioner argues, Donahue's waiver of the ten-day continuance constituted ineffective assistance of counsel. (*Id.*). Petitioner further claims that Donahue failed to object to the omission of the amended indictment in the record and failed to object to the reading of a charge not found in the indictment. (*Id.*).

The state habeas courts found that Attorney Donahue rendered reasonably effective assistance of counsel and that petitioner failed to show that had counsel acted as petitioner now asserts he should have, such as addressing the indictment issue differently, the outcome of the case would have likely been different. *Ex parte McAfee*, Application No.WR-65,926-01, page 285.

Petitioner concedes that he was in court when the state district court granted the motion to amend the indictment but he claims that he was unaware of what was taking place because the hearing took place at the bench. (Docket Entry No.1, Memorandum). He claims that Donahue blocked the state district judge from advising petitioner about his rights and Donahue misrepresented to the state district court that he had discussed such amendment with petitioner when he had not done so. (*Id.*).

The record reflects that after jurors were empanelled, the state district court held a brief conference at the bench and then allowed jurors to take a break. *McAfee v. State*, No.01-03-01041-CR, Reporter's Record, Volume 3, page 8. Thereafter, in open court, with the

19

defendant present, and jurors outside, the state district judge asked if the parties were prepared to proceed with the motion to amend the indictment, which had been filed the same day.  *Id.*  The prosecutor indicated that the State was ready and Attorney Donahue asked the state district judge to handwrite an order with the court's disposition of the motion.  *Id.* at 9.  The state district court questioned Donahue as to whether petitioner would accept the amendment and waive the ten days notice and proceed to trial.  *Id.* at 10.  Donahue replied that petitioner waived the ten day notice and the state district court granted the motion.  *Id.*  Donahue then stated that he did not have any other pre-trial motions but he wanted to talk with his client "just a moment further about this amendment just for a moment, please."  *Id.*  The state district judge then queried whether Donahue wanted the court to ask petitioner if he had been apprised of his rights for ten days and whether Donahue had explained it to him.  *Id.*  Donahue replied, "I have discussed it with him."  *Id.*  Donahue then declined the court's offer to put on the record that Donahue had advised petitioner of the waiver.  *Id.* at 11.

Among his complaints at the hearing on his motion for new trial, petitioner stated that he asked Donahue "to do stuff with the indictment because I thought it was vague."  *Id.*, Motion for New Trial, page 2.  Petitioner also complained that Donahue did not object to the amendment.  *Id.* at 3.  Petitioner attached letters that he wrote Donahue, which he claimed supported his complaints about Donahue's representation.  *Id.* at 6; Exhibits.  None of the letters mention the amended indictment.  *Id.*  The prosecutor noted at the hearing that petitioner "knew the indictment had been amended . . . and [that she] believe[d] that Mr. Donahue went over that with Mr. McAfee."  *Id.* at 21.  Petitioner testified that he was informed about the defective indictment the morning the amendment was granted.  *Id.*  He claims that he was not notified that he had ten days "to find out what was going on."  *Id.*  Donahue protested that the record would

show that the state district judge asked petitioner if he wanted the ten days to prepare for a new trial.  *Id.* at 22.  The state district court denied the motion for new trial.  *Id.* at 48.

Even though the record does not show that the state district court advised petitioner of his rights regarding the amended indictment, the record affirmatively shows that Donahue stated that he had discussed the waiver with petitioner.  Moreover, petitioner has not shown that the amendment of the indictment and the waiver of the continuance rendered the trial as a whole fundamentally unfair[2] or that the outcome of the trial would have been different had Attorney Donahue acted differently with respect to the indictment.  Likewise, petitioner has not shown that he was prejudiced by Attorney Donahue's failure to object to the omission of the amended indictment in the record and to the reading of a charge not found in the indictment. (*Id.*).  Accordingly, petitioner has not demonstrated that the state habeas courts' findings were an unreasonable application of clearly established federal law.

### 3. Motion for New Trial Hearing

Petitioner contends that he was denied the effective assistance of counsel during the hearing on his motion for new trial because trial counsel's duty of loyalty and zealous advocacy to petitioner were compromised by trial counsel's own self-interest to defend himself against petitioner's claim of ineffective assistance of counsel.  (Docket Entry No.1).  Respondent contends that petitioner's claim fails under the *Strickland* standard.  (Docket Entry No.7).

---

[2] The amendment of an indictment and the granting of a continuance result from a Texas procedural rule.  TEX. CODE CRIM. PROC. ANN. art. 28.10(a) (Vernon 2006).  Because "[f]ederal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct errors of constitutional dimensions," *Smith v. Phillips*, 455 U.S. 209, 221 (1982), the failure of a state court to comply with a state procedural rule presents a question of state law only.  For that reason, this Court ordinarily does not review questions of state criminal procedure.  *Moreno v. Estelle*, 717 F.2d 171, 179 (5th Cir. 1983).  A question of constitutional dimensions arises only where a violation of state procedure amounts to a violation of due process that renders the trial as a whole fundamentally unfair. *Sawyer v. Butler*, 848 F.2d 582, 594-95 (5th Cir. 1988).

The Supreme Court has not addressed the issue of whether there is a right to counsel on a motion for new trial.  *Graves v. Cockrell*, 351 F.3d 143, 155 (5th Cir. 2003). Accordingly, there is no "clearly established federal law" on this issue upon which this Court may determine whether the state court decision involved an unreasonable application of clearly established federal law.  *See Reed v. Quarterman*, 504 F.3d 465, 486-87 (5th Cir. 2007).

The Texas Court of Criminal Appeals, however, has determined that under federal law, the thirty-day period in which to file a motion for new trial is a critical stage of a criminal proceeding and a defendant has a constitutional right to counsel during that period.  *Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007).  The Texas Court of Criminal Appeals has further held that in cases where a defendant is represented by counsel during trial, he must rebut the presumption that his trial counsel continued to adequately represent the defendant during this critical stage.  *Id.*  Under *Cooks*, if a defendant rebuts this presumption with evidence that he was deprived of adequate counsel during this stage, this deprivation of counsel is subject to a harmless error analysis or prejudice analysis.  *Id.* citing *Satterwhite v. Texas*, 486 U.S. 249, 257 (1988) (holding that deprivation of right to counsel subject to harmless error analysis when this deprivation did not contaminate "the entire criminal proceeding"); *see also Bell v. Cone*, 535 U.S. 685, 697 (2002) (holding that presumed prejudice standard of *United States v. Cronic*, 466 U.S. 648 (1984) applies only when counsel has entirely failed to challenge the prosecution's case); *Perillo v. Johnson,* 205 F.3d 775, 781-82 (5th Cir. 2000) (noting that presumed prejudice under *Cuyler v. Sullivan,* 446 U.S. 335 (1980) applies only  if "defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client").

22

In this case, the record affirmatively shows that petitioner's trial counsel actively participated in the adversarial process, which resulted in petitioner's conviction; it does not show that trial counsel's duty of loyalty or zealous advocacy to petitioner was compromised by the divergent or competing interests of a former or current client.   Therefore, the standard governing the ineffective assistance of counsel under *Strickland* applies in this case.   *See Beets v. Scott,* 65 F.3d 1258, 1270-72 (5th Cir. 1995) (holding that the standard enunciated in *Strickland* applies when a prisoner alleges a conflict of interest of a different ilk).

At the hearing on petitioner's motions to dismiss counsel and for new trial, petitioner testified to his complaints regarding trial counsel's representation and presented evidence in support of those claims, which the state district court admitted.   *McAfee v. State*, No.01-03-01041-CR, Reporter's Record of Motion for New Trial, Volume 1, pages 2-8; 13-17, 21-24, 42-43, 45-47.   During the course of his testimony, petitioner informed the court that he had filed a grievance with the State Bar of Texas against his trial counsel.   *Id*. at 4.   At the same time, trial counsel attempted to defend his representation of petitioner; the state district court repeatedly admonished counsel that his testimony was inappropriate because he was still petitioner's counsel.   *Id*. at 9-12, 16-20, 22-24, 38, 43, 46.   After hearing testimony regarding trial counsel's alleged deficiencies and other alleged errors that occurred during the trial, the state district court granted petitioner's motion to dismiss trial counsel and denied his motion for new trial.   *Id.* at 48-49.

Trial counsel later received a private reprimand from the State Bar of Texas. (Docket Entry No.9-5, pages 157-160).   Petitioner contends the reprimand is evidence that trial counsel provided ineffective assistance of counsel during the hearing on the motion for new trial. (Docket Entries No.1, No.9).   A breach of an ethical standard does not necessarily make out a

23

denial of the Sixth Amendment guarantee of assistance of counsel. "When examining attorney conduct, a court must be careful not to narrow the wide range of conduct acceptable under the Sixth Amendment so restrictively as to constitutionalize particular standards of professional conduct and thereby intrude into the state's proper authority to define and apply the standards of professional conduct applicable to those it admits to practice in its courts." *Nix v. Whiteside*, 475 U.S. 157, 165 (1986).

The state habeas courts found that petitioner's trial attorney delivered reasonably effective assistance of counsel. *Ex parte McAfee*, Application No.WR-65,926-01, page 285. Arguably, trial counsel's representation at the hearing on the motion for new trial was constitutionally deficient; nevertheless, petitioner fails to show that he would have been granted a new trial but for counsel's defective representation. Therefore, he fails to show that he was prejudiced by counsel's performance and fails to overcome the state habeas courts' finding that petitioner's trial attorney delivered reasonably effective assistance of counsel. *Ex parte McAfee*, Application No.WR-65,926-01, page 285. Accordingly, to the extent that the Sixth Amendment provides for the effective assistance of counsel during a hearing on motion for new trial, petitioner fails to show that he is entitled to federal habeas relief on this claim.

### C. Ineffective Assistance of Appellate Counsel

Petitioner contends that he was denied the effective assistance of counsel on appeal because his appellate counsel, George Young, failed to raise many issues on direct appeal and failed to adequately brief the ones he did raise on appeal. (Docket Entry No.1). Petitioner maintains that Young should have challenged the sufficiency of the evidence to support petitioner's conviction, the state district court's jurisdiction to hold a trial on a charge not found in the indictment, the denial of the motion for new trial, and whether petitioner was actually

24

innocent. (*Id.*). The state habeas courts found that petitioner's appellate attorney delivered reasonably effective assistance of counsel. *Ex parte McAfee*, Application No.WR-65,926-01, page 285.

An accused is constitutionally entitled to effective assistance of counsel on direct appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387 (1985). Claims of ineffective assistance of counsel are determined by the same standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Because an appellate counsel is not required to raise every nonfrivolous claim on appeal, but may select from among them in order to maximize the likelihood of success on appeal, it is difficult to demonstrate the incompetency of counsel when a brief on the merits is filed. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). The presumption of competency is overcome "only when ignored issues are clearly stronger than those presented." *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Petitioner must also demonstrate prejudice, that is, he must show a reasonable probability that, but for his counsel's failure to file claims on the ignored issues, he would have prevailed on his appeal. *Id.* at 286.

Attorney Young argued on appeal that the state district court erred in granting the State's motion to amend the indictment and that petitioner was denied the effective assistance of counsel at trial. *McAfee v. State*, No.01-03-01041-CR, Appellant's Brief. Contrary to petitioner's contention, Young noted that the court's error in granting the amendment was "compounded because the trial judge failed to have the charge mirror the indictment." *Id.*, page 7. Young also argued that Attorney Donahue rendered ineffective assistance of counsel because he failed to object to the State's motion for leave to amend the indictment and because he failed to present defense witnesses that petitioner had instructed him to call as detailed in the hearing on the

25

motion for new trial. *Id.* at 10. He did not, as petitioner alleges, specify which witnesses should have been called or what their testimony would have been. *Id.*

Petitioner fails to show that any other issues were clearly stronger than the ones Attorney Young presented on appeal, particularly in light of this Court's disposition of many of same claims. Moreover, he fails to show that he would have succeeded on appeal but for Attorney Young's failure to raise additional issues or to more thoroughly brief such issues. The record shows that the First Court of Appeals for the State of Texas ("First Court") addressed each issue that Young raised on appeal and affirmed the judgment of the state district court. *Id.* 2004 WL 2966361 at *1-4. The First Court found that the trial record clearly showed that Attorney Donahue waived petitioner's complaint to the indictment amendment and the lack of a ten-day continuance. *Id.* at *2. The First Court also found that the record, particularly the record of the hearing on the motion for new trial, did "not indicate that trial counsel's failure to object [to the indictment amendment] was unreasonable under the circumstances." *Id.* at *3. Relying again on the record of the hearing on the motion for new trial, the First Court further found that Donahue's failure to call certain witnesses was reasonable trial strategy. *Id.* at *4.

Petitioner fails to show that the state courts' determination was contrary to or involved an unreasonable application of federal law or was an unreasonable determination of the facts based on the evidence in the record.

## D. Denial of Fair Hearing

Petitioner complains that the state district court denied him a fair hearing on his motion for new trial by failing to grant his motion to dismiss trial counsel until after the hearing on the motion. (Docket Entry No.1). Petitioner claims the state court was aware of the conflict of interest from the onset of the hearing and yet allowed the hearing to proceed, thereby

26

constructively denying him the effective assistance of counsel during a critical stage.  (*Id*.).  The state habeas courts implicitly found otherwise.

The record reflects that on June 6, 2003, petitioner filed a *pro se* notice of appeal. *McAfee v. State*, No.01-03-01041-CR, Clerk's Record, page 80.   The Clerk of the Court noted that petitioner had appointed counsel but left blank the name and address of the defense attorney on appeal.   *Id*.   On June 13, 2003, petitioner filed a pre-printed fill-in-the-blank "Motion to Dismiss Court-Appointed Counsel."  *Id*. at 73.   In such document, petitioner claimed that his attorney "has failed and continues to fail to represent the defendant in an effective, concerned, independent manner."  *Id*.   Petitioner listed his complaints regarding trial counsel's representation as conflict of interest, misleading defendant, collusion with the district attorney's office, the Santa Fe Police Department, and G.S.D., and representatives of said agencies.   *Id*.   The pre-printed document further indicated that petitioner intended to file a formal grievance with the State Bar of Texas with respect to his trial counsel.   *Id*.   Petitioner prayed for dismissal and appointment of new, unnamed counsel.   *Id*. at 74.

On the same day, petitioner's trial counsel filed a motion for new trial on grounds that the evidence was insufficient to support the conviction and for reasons set forth in Exhibit A. *Id*. at 75.   Trial counsel did not move to withdraw in said motion.   *Id*.   Exhibit A, a handwritten list of petitioner's complaints regarding his trial, included a claim that trial counsel had rendered ineffective assistance of counsel.   *Id*. at 77.   Exhibit A, however, did not address specific grounds upon which petitioner based his ineffectiveness claim; instead petitioner stated in the document that "to list reason would cause conflict of interest."  *Id*.   He referred the court to the motion to dismiss counsel.   *Id*.

27

An indigent defendant is not entitled to have a particular lawyer represent him, or to demand a different appointed lawyer except for good cause.  *See Morris v. Slappy*, 461 U.S. 1 (1983).  The substitution of new appointed counsel is warranted only if the defendant makes a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust verdict.  *See Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970).  Although petitioner indicated in his pre-hearing motions that a conflict of interest existed between him and his trial counsel and alleged, among other grounds, that trial counsel had rendered ineffective assistance at trial in his motion for new trial, petitioner did not specify the nature of the conflict or the actual claims regarding counsel's representation in either motion.  Therefore, petitioner failed to show good cause to warrant the dismissal of counsel at that time.  Accordingly, petitioner fails to rebut the state habeas courts' implicit findings that petitioner was not denied a fair hearing because the state district court did not act on his motion to withdraw counsel before the hearing on the motion for new trial.

### E. Actual Innocence

Petitioner claims that he is actually innocent of the aggravated robbery of Andy McDonald, as alleged in the original indictment.  (Docket Entry No.1).  He contends that the only evidence linking him to the robbery is the testimony of Raye Ann Clark and that her testimony is not credible.  (*Id*.).

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  Rather, a claim of actual innocence is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Id*. at 404.

28

Accordingly, petitioner's claim of actual innocence is more appropriately considered under the doctrine of procedural default.

### F. Procedural Bar

Respondent contends that some of petitioner's claims are procedurally barred from federal habeas review.  (Docket Entry No.7).  Procedural default occurs where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, or (2) the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  In either instance, the petitioner is deemed to have forfeited his federal habeas claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  Such procedural defaults only bar federal habeas review, however, when the state procedural rule that forms the basis for procedural default was 'firmly established and regularly followed' at the time it was applied to preclude state judicial review of the merits of a federal constitutional claim.  *Ford v. Georgia*, 498 U.S. 411, 424 (1991).

### 1. Unexhausted Claims

Under the AEDPA, a petitioner 'must exhaust all available state remedies before he may obtain federal habeas corpus relief.'  *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). To exhaust a claim under 28 U.S.C. § 2254(b)(1) and (c) of the AEDPA, a petitioner must have presented the habeas corpus claim fairly to the state's highest court before he may bring it to federal court.  *Castille v. Peoples*, 489 U.S. 346 (1989); *Fisher v. State*, 169 F.3d 295, 302 (5th Cir. 1999).

29

In this case, petitioner did not allege in his state habeas application claims that his trial counsel rendered constitutionally ineffective assistance by failing to investigate Andy McDonald and failing to seek a directed verdict.  Because petitioner has not presented these claims to the Texas Court of Criminal Appeals, he has failed to exhaust them.

Texas prohibits successive writs challenging the same conviction except in narrow circumstances.  TEX. CODE CRIM. PROC. ANN. art. 11.07,§4(a) (Vernon 2005).  The Texas Court of Criminal Appeals will not consider the merits or grant relief on a subsequent habeas application unless the application contains sufficient specific facts establishing the following:

> (1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

*Id.*  The Texas Court of Criminal Appeals applies its abuse of the writ doctrine regularly and strictly.  *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (per curiam).

Petitioner does not allege specific facts to show that his unexhausted claims in the pending petition could not have been raised in a PDR or state habeas application.  Furthermore, as discussed below, petitioner does not allege specific facts that would establish that he is innocent in any of his pleadings.  Therefore, petitioner's unexhausted claims do not fit within the exceptions to the successive writ statute and would be procedurally defaulted in state court. *Coleman*, 501 U.S. at 735 n.1.  Such a bar precludes this Court from reviewing petitioner's claims absent a showing of cause for the default and actual prejudice attributable to the default, or a showing that failure to consider such claims will result in a fundamental miscarriage of justice.

*Id.* at 750.  To show a miscarriage of justice, the petitioner must demonstrate that a constitutional violation probably resulted in the conviction of one who is actually innocent of the crime.  *See Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997).

Petitioner contends that he has not defaulted these claims; he maintains that the issue of investigating McDonald is part of preparing for trial and is a strategy issue, which he brought in the state habeas application.  (Docket Entry No.9, page 12).  The record does not support petitioner's contention.  *Ex parte McAfee*, Application No.WR-65,926-01, pages 9, 53-75.  Therefore, petitioner fails to show cause for his failure to raise such claims in a petition for discretionary review or by state habeas action.

Petitioner, however, contends that he is actually innocent of the aggravated robbery.  (Docket Entries No.1, No.9).  To make this showing, petitioner must prove that, as a factual matter, he did not commit the crime for which he was convicted.  *See Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000).  To surmount a procedural default through a showing of actual innocence, petitioner must support his allegations with new, reliable evidence that was not presented at trial, and must show that, in light of this evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  *House v. Bell*, 547 U.S. 518 (2000).  Examples of new, reliable evidence include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence.  *Fairman v. Anderson*, 188 F.3d 635, 645 (5th Cir. 1999).

Petitioner does not rely on new evidence in support of his actual innocence claim. Instead, petitioner argues that he was convicted of robbing the wrong person because the state district court failed to physically amend the indictment to name Raye Ann Clark as the complainant instead of Andy McDonald.  (Docket Entry No.1, No.9).  Without more, he fails to

31

show that he is actually innocent of aggravated robbery. Accordingly, petitioner's claims regarding his trial counsel's failure to investigate Andy McDonald and to move for a directed verdict are procedurally barred from federal habeas review.

2. Sufficiency of the Evidence to Support Conviction

Petitioner also contends that the evidence is legally and factually insufficient to support his conviction for aggravated robbery and a deadly weapon finding. Factual insufficiency of the evidence is not a cognizable habeas ground. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Woods v. Cockrell*, 307 F.3d 353, 357-58 (5th Cir. 2002). Accordingly, petitioner's argument raises only a legal sufficiency challenge.

Although petitioner challenged the sufficiency of the evidence to support his conviction in his state habeas application, he did not raise such issue on direct appeal. Under Texas law, sufficiency of the evidence is not cognizable in a post-conviction writ of habeas corpus. *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994); *West v. Johnson*, 92 F.3d 1385, 1398 n.18 (5th Cir. 1996). Respondent maintains that petitioner's failure to raise the issue on direct appeal and in a PDR in a procedurally proper manner constitutes a procedural default that excludes the issue from federal habeas corpus review. (Docket Entry No.7).

The state district court, sitting as a habeas court, did not enter a finding that the insufficiency claim was procedurally barred. Without a clear and express statement that the state procedural ground was the basis for its decision independent of the federal-law ground, a federal court must decline to impose the state procedural default as a bar to federal review of a claim. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999). However, since *Bledsue*, the Texas Court of Criminal Appeals has held that although a denial without written order generally signifies a ruling on the merits, claims regarding sufficiency of the evidence will always be procedurally

32

barred by that court in a post-conviction habeas proceeding. *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). In light of the clear language in *Grigsby*, this Court finds that petitioner's insufficiency claim was barred by the Texas Court of Criminal Appeals on procedural grounds. Such bar precludes this Court from reviewing petitioner's insufficiency claim absent a showing of cause for the default and actual prejudice attributable to the default. *Coleman*, 501 U.S. at 750.

To show cause for a procedural default, a petitioner must demonstrate the existence of an objective external factor that caused the default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Examples of external impediments include active government interference or the reasonable unavailability of the factual or legal basis for the claim." *Rodriguez*, 104 F.3d at 697. Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different. *Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000).

Petitioner contends that his appellate attorney rendered constitutionally ineffective assistance of counsel by failing to assert the insufficiency claim on direct appeal. (Docket Entry No.9, pages 9, 13). Ineffective assistance of counsel may, in some circumstances, constitute cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). "Not just any deficiency will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Id.* "In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is itself an independent constitutional claim." *Id.* (emphasis in original). Therefore, a claim of ineffective assistance of counsel must be presented to the state court as an independent claim before it may be used to establish cause for a procedural default. *Id.* at 452.

33

As in the pending petition, petitioner challenged the effectiveness of his appellate counsel in his state habeas application on grounds that counsel failed to raise an insufficiency of the evidence claim on direct appeal. *Ex parte McAfee*, Application No.WR-65,926-01, pages 76-82. As in his state habeas application, petitioner claims the insufficiency claim includes his claims regarding the jurisdiction of the state district over the case, the sufficiency of evidence to support the deadly weapon finding, and his actual innocence. (*Id*. at 13). As previously discussed, petitioner has not show that he was prejudiced by his appellate counsel's failure to raise such issues on direct appeal. Accordingly, petitioner's challenge to the sufficiency of the evidence to support his conviction is procedurally barred from federal habeas review.

Alternatively, the Court finds that sufficient evidence under the *Jackson v. Virginia* standard to support petitioner's conviction for aggravated robbery as a matter of law.[3]

---

[3] In evaluating a petitioner's challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted). In making this determination, the Court must resolve all credibility issues in favor of the prosecution. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). Either direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990). The fact that most of the evidence against a defendant was circumstantial does not change the standard of review. *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1305 (5th Cir. 1991).

Under Texas law, a person commits aggravated robbery if during the course of committing theft and with intent to obtain or maintain control of the property he intentionally or knowingly places another in fear of imminent bodily injury or death and uses or exhibits a deadly weapon. TEX. PEN. CODE ANN. §§ 29.03(a)(2), 29.03(a)(2) (Vernon 2003). A person acts "in the course of committing theft" if he commits a theft or attempted theft as defined by state law. *Blount v. State*, 851 S.W.2d 359 n. 3 (Tex. App.—Houston [1st Dist.] 1993, no pet). Theft is defined by state law as unlawfully appropriating property with intent to deprive the owner of property. TEX. PEN. CODE ANN. § 31.03. Although theft is an integral part of the offense of aggravated robbery, the actual completion of a theft is not necessary for conduct to constitute robbery. *Blount*, 851 S.W.2d at 364 (citing *Cook v. State*, 840 S.W.2d 384, 387 (Tex. Crim. App. 1992), *overruled on other grounds by Ex parte Hawkins*, 6 S.W.3d 554 (Tex. Crim. App. 1999)). It follows, that the offense of aggravated robbery does not require as an element that the property sought actually be obtained; "[i]t is sufficient to show an intent to obtain (or maintain) control of the property[.]" *Id.* citing *Watts v. State*, 516 S.W.2d 414, 415 (Tex. Crim. App. 1974).

In this case, jurors heard testimony that the robber brought a can of oil to the counter, pulled a knife out, and asked cashier Raye Anne Clark, whether she had ever been robbed. *McAfee v. State*, No.01-03-01041-CR, Reporter's Record, Volume 3, page 182. He then jumped on the counter and asked her to open the cash drawer. *Id.* She opened the drawer and he ordered her to the cooler. As she started toward the cooler, the robber left the store. *Id.* She testified that she felt threatened and was in fear that he could possibly cause some type of serious bodily injury.

443 U.S. 307, 318 (1979).  In either case, petitioner fails to show that the state habeas courts' findings were an unreasonable application of federal law or an unreasonable determination of the facts from the record in this case.

## IV. CERTIFICATE OF APPEALABILITY

---

*Id.* at 183; 198.  The police report, which was not admitted at trial, reflects that the robber "pulled out all of the paper currency, which was in the drawer;" estimated to be about $260.00.  (Docket Entry No.9-5, page 31). Although the record does not show that the robber took money from the cash drawer, a rational jury could conclude from this evidence that the robber attempted to commit theft, by unlawfully appropriating the contents of the cash drawer from the cashier, who maintained control of the contents of the drawer.  A rational juror could also conclude that the robber intended to obtain or maintain control of the contents of the cash drawer, and that he intentionally or knowingly placed the cashier in fear of imminent bodily injury or death when he exhibited a knife, which could be used as a deadly weapon.  Therefore, under the *Jackson* standard, the evidence is legally sufficient to support a conviction for aggravated robbery under state law.

The issue at trial, however, was the identity of the robber.  Clark initially described the robber to law enforcement officers as a while male, approximately six feet tall, blond to brown hair, sporting a mustache and wearing a blue denim shirt and blue denim pants.  *Id.* at 148.  Jurors also heard law enforcement testimony that complainant identified petitioner as the armed robber when she was shown the photo array, which included his photograph.  *Id.* at 160.  Complainant testified that she could not initially give a description of the robber at the time of the offense because she was so traumatized.  *Id.* at 184.  Clark, however, testified that she unequivocally identified petitioner as the armed robber from the photo array and she unequivocally identified him as the robber in court.  *Id.* at 187-88. Under Texas law, evidence of identity can be proven by either direct or circumstantial evidence.  *See Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (finding sufficient evidence to convict even when victim could not identify perpetrator).  Generally, the testimony of a single, uncorroborated eyewitness is sufficient to support a conviction.  *United States v. King*, 703 F.2d 119, 125 (5th Cir. 1983).

Moreover, the evidence is sufficient to support a deadly weapon finding.  Under state law when a challenge is made to the legal sufficiency of a deadly weapon finding, the reviewing court must determine whether the evidence demonstrated that: (1) the object meets the statutory definition of a dangerous weapon; (2) the deadly weapon was used or exhibited during the transaction from which the felony conviction was obtained; and (3) other people were put in actual danger.  *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (en banc).  Under state law, a deadly weapon is anything capable of causing death or serious bodily injury in its "intended use" or "in the manner of its use."  TEX. PEN. CODE ANN. § 1.07(a)(17)(B) (Vernon 2003).  A deadly weapon may be "used" even if it is merely possessed, if that possession facilitates the felony offense.  *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989) (finding weapon was "used" because it protected and facilitated defendant's care, custody and management of the drugs); *Coleman v. State*, 145 S.W.3d 649, 654-55 (Tex. Crim. App. 2004) (finding display, use, or reference to weapon is not a prerequisite for finding "use" of a deadly weapon).  In this case, Clark  attested that she was "absolutely sure he had a knife in his hand when he approached [her]."  *Id.* at 188.  Given Clark's testimony, a rational trier of fact could have found beyond a reasonable doubt that the knife brandished by defendant during the course of the robbery was a deadly weapon pursuant to state law.

35

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).   Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).   On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).  A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right.  Therefore, a certificate of appealability from this decision will not issue.

## V. CONCLUSION

Finding no contrary or unreasonable application of clearly established federal law in the record and no unreasonable determination of the facts in light of the evidence presented in the state court proceeding, the Court ORDERS the following:

1.   Respondent's motion to dismiss petitioner's habeas action (Docket Entry No. 7) is GRANTED.  Petitioner's habeas claims are DENIED and this habeas action is DISMISSED WITH PREJUDICE.

2.      Petitioner's Motion to Transfer (Docket Entry No.17) is DENIED.

3.      All other pending motions, if any, are DENIED.

4.      A certificate of appealability is DENIED.

It is so ORDERED.

SIGNED at Houston, Texas, this 23rd day of September, 2008.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

37